NO. 12-02-00349-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


IN THE INTEREST OF
§
 APPEAL FROM THE 



A.L.O., S.N.O., AND C.E.O.,
§
 COUNTY COURT AT LAW



MINOR CHILDREN
§
 HOUSTON COUNTY, TEXAS

 

MEMORANDUM OPINION


 Richard Zane Oliver ("Oliver") appeals from an order modifying his current child support
and ordering payment of arrearages. In two issues, Oliver argues that the trial court abused its
discretion in increasing his current child support and ordering retroactive child support. We affirm.


Background

 On January 18, 2001, Oliver and Leah Ann Oliver (now "Tabor") appeared before the
Houston County Court at Law and agreed to a final decree of divorce. At the hearing, Oliver
testified that he was unemployed. In the decree, Oliver was ordered to pay child support to Tabor
in the amount of $450 per month for the couple's three minor children, A.L.O., S.N.O., and C.E.O. 
The decree also contained a provision which ordered Oliver, upon obtaining employment, to provide
to Tabor proof of income, including but not limited to proof of any extra benefits provided through
his job, such as use of a vehicle, expense account, and payment of health insurance benefits. Oliver
was also required to furnish Tabor with proof of income from any business interest or investment. 
Further, the parties agreed that when Tabor received proof of Oliver's income, a modification order
would be entered increasing Oliver's child support to thirty percent of his total net resources
effective on the first of the month following his employment. The divorce decree was signed on
April 19, 2001.

 On August 30, 2002, Oliver filed a Motion for Clarification of Child Support Order alleging
that the Attorney General was attempting to collect child support Oliver had already paid. Both the
Attorney General and Tabor filed answers. On September 12, 2002, the Attorney General filed a
Motion for Enforcement and Modification of Child Support Order requesting a judgment for
arrearages and modification of child support. Hearings on the motions were held on September 24
and October 24, 2002. 

 At the October 24 hearing, Oliver stated that he was unemployed and receiving
unemployment benefits when his child support payments were originally set. Oliver testified that
he pays $221 per month in insurance premiums for his three children and that he understood he was
to provide proof of income to Tabor when he obtained employment. He also stated that he
understood his child support would be modified effective on the first of the month following his
employment. Further, he understood that, if he waited to provide information regarding his
employment, the effective date of modification would be retroactive to the first day of the month
following his initial date of employment. Oliver stated that he "[wouldn't] have a problem" with
the trial court finding that he should have paid some child support beginning February 1, 2002
because of his employment with Laredo Luxury ("Laredo"). 

 Upon further examination, Oliver testified that he was employed by Dealer Special Finance
Group ("DSFG") from December 2000 through February of 2001. He stated that he did not make
any money as a result of this employment. Nonetheless, he did not believe that he furnished Tabor
with information concerning this employment. He also did not inform Tabor upon his termination
from DSFG as required by the divorce decree. Further, Oliver testified that he was employed by
Kustom Kreations in 2001, selling conversion units. Oliver was provided with two demo vehicles,
one for him and one for another salesman. His sales commissions were paid back to the company
for use of the demo vehicle and reimbursement of expenses. However, he failed to supply Tabor
with proof of income or benefits from this employment as required by the decree. He is no longer
employed by Kustom Kreations but did not inform Tabor upon his termination from this
employment.

 In about November of 2001, Oliver became employed as general manager of Laredo, a
partnership. His salary is $500 per week pursuant to an agreement made at the inception of the new
company. Oliver stated that he is a managing member of Laredo, but denied being able to set his
own salary. He testified that he receives no bonuses or commissions. Through his employment, he
is provided with a company truck. 

 In response to Tabor's request in April 2001, Laredo sent a letter stating that Oliver's gross
salary is $500 per week or $26,000 per year, and that he did not have a "company vehicle, insurance
or any other expense accounts." Oliver stated that he did not receive the company truck until three
weeks before the hearing. Tabor testified that she received a letter from Oliver on May 1, 2002
which included documentation of Oliver's employment and wages. The documentation included
Oliver's W-2 for 2001 which listed "Oliver Family Enterprises, Ltd." as his employer.

 Oliver resides in a house owned by a family limited partnership. Oliver's name is not on the
deed. Tabor testified that she, Oliver, and the family limited partnership owned the house during the
marriage. As a consequence of the divorce, she was "released" and her name was "tak[en] off" of
the house. Oliver's name is on the bank note, although he characterized his name on the note as
being "just a placement" in order to show "some sort of responsibility" from him. At another point
in his testimony, Oliver denied being a co-signer on the house note, denied that he or Tabor were on
the note to his knowledge, and denied that he and Tabor had any "bearing" on the note. The house
note is $28,000 per year due on December 30. Oliver testified that the family partnership is
ultimately responsible for the house note but also stated that, prior to the demise of his former
business in June 2000, he was responsible for the note. Before that time, Oliver received a bonus
each year to pay the house note. Since his business failed, the family partnership, Chuck and Gwen
Oliver Limited Family Partnership, has paid the note. The partnership paid the house note in
December 2000, the year he was unemployed, and in December 2001. On the date of the hearing,
the next payment was due December 30, 2002, and Oliver testified that the family partnership would
probably have to pay the note.

 On November 14, 2002, the trial court signed an order clarifying the prior child support
order, reducing Oliver's unpaid child support to judgment, and modifying his child support. At the
January 18, 2001 hearing, the trial court found that Oliver testified that he was unemployed. Based
upon the allegations of unemployment, the parties agreed and the trial court approved the decree,
unlimited by section 156.401 (1) of the Texas Family Code, (2) on the grounds that modification was
expected shortly. However, the trial court found that, contrary to his testimony, Oliver was
employed on January 18, 2001 and that Oliver was receiving substantial salary, investment returns,
and other benefits by December of 2001. The trial court also found that, since the final decree,


 there has been a material and substantial change in circumstances of the children or parties and the
monthly amount of the child support award under the Order differs by either 20 percent or $100 from
the amount that would be awarded in accordance with the child support guideline, which warrants the
following modification of the existing child support order.



 Because Oliver's W-2 for 2001 listed Oliver Family Enterprises, Ltd. as his employer, the
trial court found that the family partnership paid a substantial benefit to him, i.e., the house note of
$28,000 per year. Thus, Oliver's gross resources, beginning January 2002, totaled $57,360 per year
or $4,780 per month, including salary, house payment, and company truck payment. Oliver's net
income totaled $3,581.87 per month with $221 per month deducted for the children's health
insurance for total net resources of $3,360.87 per month. The trial court ordered an increase of child
support in the amount of $1,008.26 per month to Tabor beginning November 1, 2002. 

 Further, the trial court found that (1) Oliver was in arrears as of October 24, 2002 which
included "unpaid child support, any balance owed on previously confirmed arrearages, and
retroactive support judgments," (2) Oliver violated orders of the trial court to provide documentation
of wages and benefits on the first month following employment, and (3) the parties agreed, and the
final decree ordered, that modification orders were to become effective on the first month following
Oliver's employment. Evidence of wages and benefits from January 2001 to December 2001 was
inconclusive, and the trial court declined to order retroactive child support for that period. 

 However, the trial court ordered modification effective January 1, 2002, the month following
Oliver's employment, at the rate of $1,008.26 per month based on net resources of $3,360.87 per
month. Therefore, the trial court rendered judgment against Oliver in the amount of $5,509.40 with
interest at the rate of six percent per annum. The amount of the judgment is the "difference in the
amount paid as child support and the amount of child support accrued in accordance with the
agreement of the parties" and the orders of the trial court. Oliver was ordered to pay the child
support judgment at the rate of $50.00 per month beginning November 1, 2002, until the arrearage
is paid in full. This appeal followed.


Standard of Review

 A court's order of child support will not be disturbed on appeal unless the complaining party
can show a clear abuse of discretion. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In
re L.R.P., 98 S.W.3d 312, 313 (Tex. App.-Houston [1st Dist.] 2003, pet. dism'd). The test for abuse
of discretion is whether the trial court acted without reference to any governing rules or principles. 
Worford, 801 S.W.2d at 109; In re L.R.P., 98 S.W.3d at 313. In other words, the issue is whether
the trial court's actions were arbitrary or unreasonable. Worford, 801 S.W.2d at 109; In re L.R.P.,
98 S.W.3d at 313. 

 Under the abuse of discretion standard, legal and factual insufficiency are not independent
reversible grounds, but are relevant components in assessing whether the trial court abused its
discretion. In re L.R.P., 98 S.W.3d at 313; Farish v. Farish, 921 S.W.2d 538, 542 (Tex.
App.-Beaumont 1996, no writ). In making this determination, the reviewing court must view the
evidence in the light most favorable to the actions of the trial court and indulge every legal
presumption in favor of the judgment. Nordstrom v. Nordstrom, 965 S.W.2d 575, 578 (Tex.
App.-Houston [1st Dist.] 1997, pet. denied); In re S.B.C., 952 S.W.2d 15, 17-18 (Tex. App.-San
Antonio 1997, no writ). If there is some evidence of a substantive and probative character to support
the judgment, the trial court did not abuse its discretion. Nordstrom, 965 S.W.2d at 578; In re
S.B.C., 952 S.W.2d at 18.



Characterization of House Payment

 Oliver contends that the trial court abused its discretion by characterizing the lump sum
house payment as income. He argues that the house note payment made by Oliver's family was paid
prior to the divorce and is a financial obligation of both Oliver and his parents. Thus, Oliver asserts,
payment of the house note by Oliver's parents in December 2001 would not be a change in economic
conditions. Further, Oliver argues that inclusion of the payment as income in anticipation that it
would be made in 2002 or subsequent years is not supported by the law or in the record. The
Attorney General contends that, whether the house payment is compensation by Oliver's employer
or a gift, it should be included as part of his net resources under the Family Code. 

Applicable Law

 A trial court may modify a child support order if the circumstances of the child or a person
affected by the order have materially and substantially changed since the date of the order's
rendition. Tex. Fam. Code Ann. § 156.401(a)(1). Further, a child support order may be modified
if it has been three years since the order was rendered or last modified and the monthly amount of
the child support award differs by either twenty percent or $100 from the amount that would be
awarded in accordance with child support guidelines. Tex. Fam. Code Ann. § 156.401(a)(2). In
determining whether the circumstances of the child or a person have materially and substantially
changed, evidence regarding the parents' or child's financial circumstances and needs at the time of
divorce and the time of modification should be considered by the trial court. Farish, 921 S.W.2d
at 541; In re Striegler, 915 S.W.2d 629, 635 (Tex. App.-Amarillo 1996, writ denied).

 Under the Family Code, net resources, for calculating child support, include all wage and
salary income and other compensation for personal services, including commissions, overtime pay,
tips, bonuses, and all other income actually being received, including gifts and prizes. Tex. Fam.
Code Ann. § 154.062(a), (b)(1), (5) (Vernon 2002). The duty to support a child is not limited to a
parent's ability to pay from current earnings, but also extends to his or her financial ability to pay
from any and all sources that might be available. In re Striegler, 915 S.W.2d at 638; Roosth v.
Roosth, 889 S.W.2d 445, 455 (Tex. App.-Houston [14th Dist.] 1994, writ denied); Musick v.
Musick, 590 S.W.2d 582, 586 (Tex. Civ. App.-Tyler 1979, no writ). 


Analysis

 A family limited partnership paid the annual lump sum note for the house in which Oliver
resides for two years before the modification hearing. Oliver complains that this lump sum payment
does not reflect a change in economic circumstances nor is it income. First, evidence regarding
Oliver's financial circumstances at the time of divorce and at the time of modification must be
considered to determine whether Oliver's circumstances have materially and substantially changed. 
See Farish, 921 S.W.2d at 541; In re Striegler, 915 S.W.2d at 635. At the time of the divorce
decree, Oliver testified that he was unemployed. At the modification hearing, Oliver testified that
he was employed and that a family limited partnership paid the note on his residence. The payment,
along with his employment, reflects a material and substantial change in Oliver's circumstances
since the divorce decree. Therefore, because there is some evidence of a substantive and probative
character to support a finding that Oliver's circumstances had materially and substantially changed
since the divorce decree, the trial court's finding is not arbitrary or unreasonable or an abuse of its
discretion. See Worford, 801 S.W.2d at 109; In re L.R.P., 98 S.W.3d at 313; Nordstrom, 965
S.W.2d at 578; In re S.B.C., 952 S.W.2d at 18.

 The second issue is whether the lump sum house payment should be characterized as income. 
Oliver testified that the Chuck and Gwen Oliver Limited Family Partnership paid the note on the
house. However, the trial court found that Oliver's employer, Oliver Family Enterprises, Ltd., paid
the note on the house. Although there appears to be a discrepancy as to which family partnership
paid the house note, that is not determinative. If the house note was paid by Oliver's employer, it
is compensation for personal services and should be included in Oliver's net resources. If the house
payment was paid by the other family limited partnership, it is a gift and properly included in his net
resources. See In re L.R.P., 98 S.W.3d at 314 (noting that the plain language of the statute includes
gifts and prizes in its definition of "all other income actually being received"). Therefore, because
there is some evidence of a substantive and probative character to support a finding that the house
payment should be characterized as income and included as part of Oliver's net resources for
calculating child support, the trial court's finding is not arbitrary or unreasonable or an abuse of its
discretion. See Worford, 801 S.W.2d at 109; In re L.R.P., 98 S.W.3d at 313; Nordstrom, 965
S.W.2d at 578; In re S.B.C., 952 S.W.2d at 18. Accordingly, Oliver's first issue is overruled.

Retroactive Child Support

 Oliver argues that the trial court ordered retroactive child support for a period of time not
authorized by law. According to Oliver, retroactive modification of child support may not be
ordered prior to the date of the filing of a motion to modify. Therefore, according to Oliver, the trial
court abused its discretion by ordering retroactive support beginning nine months before the date of
the Motion for Enforcement and Modification of Child Support. The Attorney General contends that
Oliver waived his complaint for retroactive support because he failed to object at trial. 

 According to the Texas Family Code, a support order may be modified only as to obligations
accruing after the earlier of the date of service of citation or an appearance in the suit to modify. 
Tex. Fam. Code Ann. § 156.401(b). Child support payments may not be modified once they have
accrued. Willis v. Willis, 826 S.W.2d 700, 702 (Tex. App.-Houston [14th Dist.] 1992, no writ). 
Thus, a trial court may only order retroactive support obligations accrued since the motion to modify
was filed. Holley v. Holley, 864 S.W.2d 703, 707 (Tex. App.-Houston [1st Dist.] 1993, writ
denied). However, in order to present a complaint for appellate review, the record must show that
a complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P.
33.1(a)(1). The request, objection, or motion must state the grounds for the ruling that the
complaining party sought from the trial court with sufficient specificity to make the trial court aware
of the complaint. Tex. R. App. P. 33.1(a)(1)(A). The trial court must have ruled on the request,
objection, or motion, either expressly or implicitly. Tex. R. App. P. 33.1(a)(2)(A). If the trial court
refused to rule, the complaining party must have objected to the refusal. Tex. R. App. P. 33.1(a)(2)
(B).

 Oliver maintains that the trial court abused its discretion in ordering retroactive modification
of child support beginning January 1, 2002. However, the record does not reveal that Oliver timely
objected to the retroactive modification of his child support. Furthermore, Oliver, in essence, agreed
to retroactive modification of child support by (1) testifying that he understood his child support
would be modified effective on the first of the month following his employment, (2) testifying that
he understood that, if he waited to provide information regarding his employment, the effective date
of modification would be retroactive to the first day of the month following his initial date of
employment, and (3) testifying that he "[wouldn't] have a problem" with the trial court finding that
he should have paid some child support beginning February 1, 2002 because of his employment with
Laredo. Therefore, he presents nothing for our review. Accordingly, Oliver's second issue is
overruled.


Conclusion

 Based upon our review of the record, we conclude that the trial court did not abuse its
discretion in increasing Oliver's child support. Further, we conclude that Oliver waived his
complaint that the trial court abused its discretion in ordering retroactive modification of child
support. Therefore, the judgment of the trial court is affirmed.




 SAM GRIFFITH 

 Justice



Opinion delivered July 31, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
















(PUBLISH)
1. Section 156.401 of the Texas Family Code provides that a court may modify a child support order if the
circumstances of the child or a person affected by the order have materially and substantially changed since the
order's rendition or if it has been three years since the order was rendered or last modified and the monthly amount
of the child support award under the order differs by either twenty percent or $100 from the amount that would be
awarded in accordance with the child support guidelines. Tex. Fam. Code Ann. § 156.401(a) (Vernon 2002). 
Further, the child support order may be modified only as to obligations accruing after the earlier of the date of
service of citation or appearance in the suit to modify. Tex. Fam. Code Ann.§ 156.401(b).
2. All statutory references are to the Texas Family Code unless otherwise indicated.