**IN INTEREST of S.B.C., C.F.C., R.B.C.**

**No. 04–96–00875–CV.**

Court of Appeals of Texas, San Antonio.

June 11, 1997.

16

STONE, Justice.

Carlos Castillo appeals from an order denying his motion to modify child support. For the following reasons, we affirm.

Carlos and Beatrice Castillo divorced in 1990 and Carlos was ordered to pay $400 per month in child support for their three children [1]. In 1994, Beatrice sought and was awarded an upwards modification of the original support order. Support was set at $850 per month. In 1996, Carlos sought a downward modification due to his recent retirement from the military and his enrollment in law school. Following a hearing, the motion to modify was denied, leaving the prior order undisturbed. Carlos' motion for new trial was denied and this appeal follows.

### Modification Guidelines

Modification of a child support order may be ordered upon the showing that the circumstances of the child or a person affected by the order have materially and substantially changed since the order was signed. TEX. FAM.CODE ANN. § 156.401 (Vernon 1996). In a modification proceeding, the trial court compares the financial circumstances of the child and the affected parties at the time the support order was entered with their circumstances at the time modification is sought. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex.App.—San Antonio 1995, writ denied). The best interest of the child is the salient consideration in child support matters. *See* TEX. FAM.CODE ANN. § 156.402(a) (Vernon 1996). The trial court enjoys wide discretion in determining whether child support modification is appropriate, *see Starck v. Nelson*, 878 S.W.2d 302, 308 (Tex.App.—Corpus Christi 1994, no writ), and its decision will not be disturbed on appeal without a showing of clear abuse of that discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). The test for abuse of discretion is whether the court acted arbitrarily or unreasonably, that is, without reference to guiding rules and principles. *Tucker*, 908 S.W.2d at 532. In making this determination we must view the evidence in the light most favorable to the trial court's

Anthony W. Walluk, San Antonio, for appellant.

Arabia Vargas, Law Offices of Arabia Vargas & Lori Bindseil, San Antonio, for appellee.

Before HARDBERGER, C.J., and STONE and GREEN, JJ.

---

1. The original order set child support at $93 per month for two years. Beginning in July 1992, the order required Carlos to pay $400 per month in child support.

actions and indulge in every legal presumption in favor of the judgment. *Id.* If there is some probative and substantive evidence to support the judgment, the trial court did not abuse its discretion. *Id.* (citing *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied)).

### Material & Substantial Change in Circumstances

In two related points of error, Carlos argues that the evidence established a significant change of circumstances, and therefore, the trial court abused its discretion in leaving the support obligation at the prior level. Carlos also claims that the evidence is factually insufficient to support the finding that his earning potential and assets support an award of $850 per month.

We review a trial court's findings for factual sufficiency by the same standards used in reviewing jury answers. *Tucker*, 908 S.W.2d at 532. We consider all the evidence and set aside the findings only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The 1994 child support order was based upon Carlos' income from two jobs. Carlos was on active duty in the United States Army and had a second job as a medical lab technician in a San Antonio hospital. In 1996, Carlos retired from the military and relocated in Washington State. Since his retirement, his military retirement pay of approximately $1,332 per month is his sole source of income. Of the $1,332 per month, Carlos pays $233 to Beatrice as part of the divorce settlement. Carlos contends that there was no evidence before the trial court that he could obtain part-time employment in Washington similar to the second job he held in San Antonio. Carlos argues that because this evidence establishes a significant change in circumstances, the trial court abused its discretion in requiring him to pay an order which exceeds his financial ability. *See Broday v. Burleson*, 632 S.W.2d 803, 805 (Tex.App.—Fort Worth 1982, no writ).

The record does show a change in Carlos' circumstances. It is undisputed that Carlos voluntarily separated from the military in 1996 and voluntarily left San Antonio, thereby quitting his second job. It is also undisputed that currently Carlos' only source of income is his retirement military pay of $1,332 per month. Balanced against these circumstances, however, is the evidence that Carlos is intentionally unemployed. Carlos testified that he voluntarily left the military, voluntarily left San Antonio, and remains voluntarily unemployed because he is preparing himself for law school. He acknowledged that he is physically able to work and that he has an undergraduate degree and a master's degree in business, and approximately twenty years work experience as a medical lab specialist. Upon a finding that an obligor is intentionally unemployed or underemployed, a trial court may consider the earning potential of the obligor. *See* TEX. FAM.CODE ANN. § 154.066 (Vernon 1996); *Terry v. Terry*, 920 S.W.2d 423, 426 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Starck*, 878 S.W.2d at 307. The foregoing evidence is sufficient to support the finding that Carlos was intentionally unemployed and therefore the trial court was entitled to look to his earning potential based on his educational background and work experience.

Moreover, the duty to pay support is not limited to an obligor's ability to pay from current earnings, but also extends to his or her financial ability to pay from any and all sources that might be available. *See* TEX. FAM.CODE ANN. § 154.062 (Vernon 1996) (requiring calculation of child support to be based upon net resources which includes all wage and salary income; interest, dividends, and royalty income; self-employment income; net rental income; and all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits, unemployment benefits, disability and workers' compensation benefits, interest income from notes regardless of source, gifts and prizes, spousal maintenance, and alimony); *Giangrosso v. Crosley*, 840 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1992, no writ). Evidence was introduced that Carlos owns a home which is

estimated to have $18,000 to $20,000 in equity. Carlos does not currently reside in the home, nor use the home as rental property.

Because courts may look to assets other than income when determining whether an obligor can reasonably afford the ordered child support, *see Anderson v. Anderson*, 770 S.W.2d 92, 95-96 (Tex.App.—Dallas 1989, no writ) (noting that as factfinder court can look to totality of obligor's assets), and a court may look to earning potential upon a finding of *intentional unemployment*, it was reasonable for the trial court, as a factfinder, to conclude that in light of his education, work experience, and ability to either sell or use his house as an income-producing asset, Carlos could reasonably afford to pay the existing support order.

■ Moreover, in conjunction with the evidence of intentional unemployment, the trial court had before it evidence of a significant increase in the financial needs of the children including school tuition, food and clothing bills, special needs such as eyeglasses, and extracurricular activities. The trial court could properly consider these additional factors in determining that a downward modification was not in the best interest of the children. *See* TEX. FAM.CODE ANN. § 156.404(a) (Vernon 1996). In light of the evidence before the trial court, the court did not abuse its discretion in denying the downward modification of child support. Accordingly, points of error number one and five are overruled.

### Income of Fiancée

■ In his second point of error, Carlos complains that the trial court erroneously considered the income of his fiancée in denying his downward modification. *See Starck*, 878 S.W.2d at 306. In findings eleven and twelve, the trial court found that Carlos had no need to work to pay household expenses and that Carlos' fiancée, a dentist, pays for him to reside in her home. Section 154.069 of the Texas Family Code prohibits a court from considering spousal contributions when determining an obligor's child support amount. In *Starck*, the Corpus Christi court found error where the trial court found that appellant's wife's contribution to their joint living expenses enabled him to pay more child support. *Starck*, 878 S.W.2d at 306. We have no such evidence or finding in the instant case. There is no evidence in the record indicating the amount of income earned by Carlos' fiancée or that the trial court even considered her earnings. Rather than indicate that the trial court erroneously considered the income of Carlos' fiancée, findings eleven and twelve support the trial court's finding of Carlos' intentional unemployment. The trial court, as a factfinder, may have been persuaded that Carlos was remaining unemployed because his fiancée was supporting him. Voluntary unemployment cannot serve as an excuse for avoiding or reducing child support obligations, *Giangrosso*, 840 S.W.2d at 770, and it would have been reasonable for the court to believe that Carlos' generous fiancée contributed to his desire to remain unemployed. Point of error number two is overruled.

### Specific Findings of Fact

Carlos' third point of error contends that the trial court was required to make specific findings of fact under section 154.130 of the Family Code. This section mandates that upon a written request a trial court shall prepare findings as to the amount of net resources available to the obligor and the obligee; the amount of child support payments; the percentage of obligor's resources applied to child support; if applicable, the reasons for departure from guideline amounts when rendering a child support order; and, if applicable, the number of children that the obligor is obligated to support in more than one household when the trial court renders a child support order. TEX. FAM.CODE ANN. § 154.130 (Vernon 1996). Expressly, section 154.130 is triggered only when the trial court sets child support; it is not applicable in the instant case, therefore, because the trial court did not modify the support order. *See Terry*, 920 S.W.2d at 425-26. Point of error number three is overruled.

### Judge as Advocate

■ Carlos' fourth point of error contends that through improper questioning, the

**20** ◼

trial court became an advocate for Beatrice. The line of inquiry about which Carlos complains occurred during his attorney's closing remarks to the bench. Specifically, Carlos' attorney asked the court to make the support modification retroactive. The court asked about the ages of the children, Carlos' educational background, and posed the rhetorical question of what should happen to the children if Beatrice desired to attend law school. This line of questioning represents nothing more than the trial court clarifying the issues at hand and exploring the consequences of granting the downward modification. Point of error number four is overruled.

### Cross Point

◼ Pursuant to Rule 84 of the Texas Rules of Appellate Procedure, Beatrice urges this court to impose sanctions against Carlos for bringing a frivolous appeal. An award of damages under Rule 84 will be imposed only if the record clearly shows the appellant has no reasonable expectation of reversal, and the appellant has not pursued the appeal in good faith. *Finch v. Finch*, 825 S.W.2d 218, 226 (Tex.App.—Houston [1st Dist.] 1992, no writ). We must determine that the appeal was taken for delay only and without sufficient cause. *Jones v. Colley*, 820 S.W.2d 863, 867 (Tex.App.—Texarkana 1991, writ denied). In making these findings, this court must review the case from appellant's point of view at the time the appeal was taken, and decide whether he had any reasonable grounds to believe the case would be reversed. *Hicks v. Western Funding, Inc.*, 809 S.W.2d 787, 788 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

◼ This court has cautioned parties that the decision to appeal "should not be driven by comparative economics or wishful thinking; rather it should be based on professional judgment made after careful review of the record for preserved error and after applying applicable standards of review." *Campos v. Investment Management Properties, Inc.*, 917 S.W.2d 351, 357 (Tex.App.—San Antonio 1996, writ denied) (Green, J., concurring). The record in the instant case does reflect a change in Carlos' circumstances. Thus, Carlos has an arguable legal basis, although

teetering dangerously close to no legal basis in light of the evidence of intentional unemployment, for this appeal. We decline to impose sanctions, but we reiterate our belief that every case is not properly appealable and "that the practice of 'let's just throw as much mud as we can up on the wall and see if any of it sticks' must be discouraged." *Id.* at 356–57.

The judgment of the trial court is affirmed.